**Q.E.R., INC., a Delaware corporation, Plaintiff–Appellant,**

**v.**

**Alva J. HICKERSON, Defendant–Appellee.**

No. 87–1970.

United States Court of Appeals, Tenth Circuit.

July 25, 1989.

Steve A. Miller and David E. Graven (with him on the brief), Denver, Colo., for plaintiff-appellant.

Charles F. Brega and Penny Rodeen Bertelsen (with him on the brief), Roath & Brega, Denver, Colo., for defendant-appellee.

Before SEYMOUR, BARRETT, and BALDOCK, Circuit Judges.

PER CURIAM.

Plaintiff Q.E.R., Inc. appeals the district court's entry of a directed verdict in favor of defendant Al Hickerson, director of

Hickerson Energy Company (HEC). Q.E.R. brought this action alleging that Mr. Hickerson aided and abetted HEC's breach of its fiduciary duty to Q.E.R., and that he intentionally interfered with Q.E.R.'s contractual relations with HEC. Q.E.R. contends that there is sufficient evidence to defeat a motion for directed verdict. We reverse.

## I

■ A motion for directed verdict is reviewed under the same standard as that applied in the district court. *Wild ex rel. Guilfoyle v. Missouri, Kan., and Tex. R. Co.*, 812 F.2d 1290, 1292 (10th Cir.1987). The court may grant a directed verdict only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position. *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 634 (10th Cir.1988) (citation omitted). The evidence and inferences must be construed in a light most favorable to the nonmoving party. *Hurd v. American Hoist & Derrick Co.*, 734 F.2d 495, 498 (10th Cir.1984). A review of the evidence in this light reflects the following facts.

In the fall of 1981, HEC entered into an Operating Agreement with Simasko Production, Inc., as operator, to develop and drill nine exploratory oil and gas wells on certain properties in Oklahoma (the nine well program). Under the agreement, HEC received a fifty percent interest in the production of the nine well program and was obligated to pay fifty percent of certain costs of operations, including approximately $944,000 for the drilling costs and approximately $244,000 for oil and gas leases covering the relevent tracts of land. HEC agreed to pay the drilling costs for the project by December, 1981. Mr. Hickerson personally paid the $244,000 for the oil and gas leasehold interests in the nine well program and Simasko Production assigned the leases to HEC.

In November, 1981, HEC entered into the 1981 Hickerson–Quartet Partnership agreement with Q.E.R., a wholly-owned subsidiary of Quartet Energy Resources, Ltd., a Canadian corporation. The partnership was to engage in the exploration, drilling, and development of oil and gas prospects. Under the terms of the agreement, each party assumed certain responsibilities for specific costs of initiating and operating oil and gas projects and in return would receive a specified percentage of the production or profits from any project the partnership undertook.

Mr. Hickerson negotiated with Q.E.R. to include the nine well program as a prospect for partnership activity. Under the partnership agreement, HEC was required to raise 1.5 million dollars by December 30, 1981, to cover the drilling costs in the nine well program. HEC agreed to do so by obtaining investors to purchase limited partnership interests. In turn, Q.E.R. was required to pay the cost of the oil and gas leases and in fact did pay Mr. Hickerson approximately $251,000, the amount Hickerson paid for the nine well leases plus interest. HEC thereafter assigned the oil and gas leases to the partnership but never recorded the assignment, contrary to its stated intentions. Simasko Production had no knowledge of and did not consent to this assignment.

By late December, HEC had not been able to raise the drilling funds through offerings of limited partnership interests in the Hickerson–Quartet partnership.[1] Mr. Hickerson separately negotiated within both Simasko Production and Q.E.R. to obtain an extension of time to raise the drilling funds. Simasko Production agreed to give HEC until March 31, 1982, to pay for the drilling costs after Mr. Hickerson personally paid Simasko Production $37,000 for its cost in setting up the drilling rig. In addition, Q.E.R. agreed to amend the partnership agreement to extend the deadline by which HEC was contractually obli-

---

1. Mr. Hickerson testified that HEC's lack of success was due to the poor oil economy. Mr. Simasko, president of Simasko Production, and other witnesses for Q.E.R., however, claimed that, in December, Mr. Hickerson represented that the funds had already been committed by the limited partners but technical problems with the preparation and filing of S.E.C. documents prohibited dispersion of the funds.

gated to raise the drilling funds to March 31, 1982. Q.E.R. also secured from HEC a separate "letter agreement" under which HEC agreed to refund the $251,000 plus interest paid by Q.E.R. for the oil and gas leases if the limited partnership money was not raised by the new deadline. Thereafter, HEC failed to meet the March deadline and again requested that the deadline be extended under the partnership agreement. Q.E.R. agreed to the extension but also demanded certain concessions from HEC, including that Q.E.R. be excused for one year from any financial obligations for future oil and gas prospects under the partnership agreement.

On April 5, 1982, Simasko Production sent HEC a letter threatening to sue HEC for failure to pay the $950,000 drilling costs and indicated that it would name Mr. Hickerson and Mr. Martin, president of HEC, personally for misrepresentation of HEC's ability to raise the drilling funds. As an alternative to litigation, Simasko Production suggested HEC place its oil and gas leases into escrow and Simasko Production would thereafter help HEC find substitute buyers to purchase the leases and to assume the other obligations under the operating agreement. Under this arrangement, HEC would remain liable for the drilling costs until the individual leases were sold, but HEC would also receive full payment for the leases. HEC rejected this escrow agreement and instead, chose to assign all of the oil and gas leases back to Simasko Production without compensation, thereby forfeiting the $244,000 payment for the leases as liquidated damages. In return for the assignment, Simasko Production issued releases to HEC, Mr. Hickerson, and Mr. Martin for any liability under the operating agreement. Through this action, HEC disposed of all the partnership property without compensation and obtained releases only for HEC, the general partner, and its officers. Q.E.R. was never notified of HEC's transaction with Simasko Production, as required by the partnership agreement, until after the leases were surrendered.

Q.E.R. brought an action against Mr. Hickerson, as director of HEC, claiming he was personally liable for aiding and abetting in HEC's breach of its fiduciary duty owed as general partner to Q.E.R.,[2] and for intentionally interfering with HEC's partnership contract with Q.E.R. Q.E.R. contends the district court improperly granted a directed verdict on these two claims.

## II

The district court granted a directed verdict for three reasons. First, on the morning of trial, defendant raised for the first time the issue of whether Q.E.R., as a dissolved corporation, was the real party in interest. Q.E.R. had been dissolved by its parent corporation, Quartet Energy Resources, almost two months before the filing of the complaint. Defendant was aware that Q.E.R. had been dissolved long before the trial date, yet never raised the issue in the pretrial order or otherwise. The trial court held that Q.E.R. had the obligation to amend the complaint to name the proper party in interest, and because it failed to do so, a directed verdict was proper for this reason alone. We disagree.

Q.E.R. was incorporated under Delaware law. Delaware law provides that a corporation is a recognized entity for the purpose of maintaining legal actions if the action is brought within three years of its dissolution. Del.Code Ann. tit. 8, § 278 (1983). This action was filed within a few months of Q.E.R.'s dissolution. A dissolved corporation may maintain a federal suit when it has been given the requisite power by state law. *National Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 610 (11th Cir.1984). On this basis alone, the directed verdict

2. On appeal, Mr. Hickerson argues HEC did not owe a fiduciary duty to Q.E.R. In the pretrial order, however, Mr. Hickerson stipulated that "HEC was a fiduciary to Q.E.R. with respect to HEC's obligations to Q.E.R. under the Hickerson–Quartet Partnership agreement." More-over, nothing in the record indicates that defendant raised this argument before the district court. We will therefore not consider the argument on appeal. *See Doelle v. Mountain States Telephone & Telegraph*, 872 F.2d 942, 944 n. 4 (10th Cir.1989).

was incorrect. In addition, the district court abused its discretion in permitting defendant to raise this issue on the first day of trial where he was repeatedly made aware throughout discovery that Q.E.R. had been dissolved. Defendant had more than a sufficient opportunity to contest Q.E.R.'s status as the real party in interest, and in fact admitted in the pretrial order that jurisdiction was proper. *See Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 817 (10th Cir.1979) (pretrial order should reflect all of a party's contentions and should be "adhered to in the absence of some good and sufficient reason"). Q.E.R. should not be penalized for failing to adequately respond to this issue initially raised on the first day of trial. At the very least, it should have been granted a continuance to address the issue. 33 Federal Procedure, L.Ed. § 77:38 (Law. Co-op.1985); *cf. Conway v. Chemical Leaman Tank Lines, Inc.*, 687 F.2d 108, 112 (5th Cir.1982) (noting that a continuance is preferable to a new trial).

■ As a second basis for directing a verdict, the district court found that there was not a breach of a fiduciary duty because "in [its] view Q.E.R. itself had an exposure to liability in the event that the leases hadn't been surrendered." The record contains very little evidence which indicates that Q.E.R. was liable under the operating agreement. The operating agreement itself does not directly impose liability on an assignee of the leases.[3] On its face, the operating agreement binds only HEC. In addition, Simasko Production threatened to sue only HEC and Mr. Martin and Mr. Hickerson personally, and never looked to Q.E.R. or the partnership for payment of the drilling costs.

Based on this evidence, a jury could reasonably find Q.E.R. was not obligated under the operating agreement for the drill-

ing costs, and that these costs were solely HEC's responsibility. Contrary to the district court's conclusion, the jury could therefore also find that HEC's disposal of all the partnership property to satisfy its own debt constituted a breach of its fiduciary duty to Q.E.R. The ultimate issue in this case, however, is whether a jury could find that Mr. Hickerson was personally liable for aiding and abetting in the breach of fiduciary duty.

■ Colorado courts have not specifically recognized the tort of aiding and abetting the breach of fiduciary duty.[4] Under the Restatement (Second) of Torts § 874 (1977), "one standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." Comment c to this section states, "a person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused." In *Alexander Co. v. Packard*, 754 P.2d 780, 782 (Colo.App. 1988), the Colorado Court of Appeals held a corporate vice president personally liable for the corporation's breach of trust and for breach of a constructive trust. The court found it significant that, by breaching the trust, the officer was able to avoid substantial personal liability under an unrelated obligation to a third party. *See also In re Specialized Installers, Inc.*, 12 B.R. 546, 554 (Bankr.D.Colo.1981); *cf. Circle T Corp. v. Deerfield*, 166 Colo. 238, 444 P.2d 404, 407 (1968) (judgment entered against corporation's president based on the corporation's breach of fiduciary duty pursuant to statute).

In addition, Colorado has recognized the general rule that corporate officers and directors may be held personally liable for

---

**3.** In arguing liability attached to the partnership, Mr. Hickerson referred to a section of the operating agreement which addressed the liabilities of the parties to the agreement when a lease is "surrendered." This section does not apply to the facts of this case because it only refers to the surrender of a lease by a party to the operating agreement, and does not cover an assignment to a third party. Moreover, the section requires that all the parties to the agree-

ment must give their consent to any surrender of the leases. No such consent was given to the assignment in this case.

**4.** The district court did not directly address this issue but decided to reject Q.E.R.'s claim of aiding and abetting the breach of fiduciary duty because it determined that there was no breach of a fiduciary duty.

illegal acts of the corporation in which they actively participated. *See Klockner v. Keser*, 29 Colo.App. 476, 488 P.2d 1135, 1137 (1971). In *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408–09 (10th Cir.1958), this court stated,

> It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom.... Specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation.

Based on the theories of recovery asserted in *Alexander* and *Klockner,* we are satisfied that the claim of aiding and abetting a breach of fiduciary duty would be recognized in Colorado.

■ In light of this conclusion, whether Mr. Hickerson's involvement in the settlement with Simasko Production amounted to sufficient participation in the breach of its fiduciary duty to the partnership is a question of fact. Viewing the facts in a light most favorable to Q.E.R., there is sufficient evidence for a reasonable jury to find that Mr. Hickerson was a primary actor in all the negotiations with Simasko Production and that his involvement in the reassignment of all the partnership property constituted sufficient participation to hold him individually liable for the breach.

■ Finally, Q.E.R. challenges the district court's directed verdict on its intentional interference with contract claim. The district court found that, because the interests of Q.E.R., HEC, and Mr. Hickerson were aligned, there could be no improper motive on Mr. Hickerson's part in deciding to reassign the nine well leases. Again, the court assumes that Q.E.R. was liable for HEC's obligations under the operating agreement. As discussed above, the evidence does not conclusively support this finding but raises an issue of fact for the jury. In addition, the district court found that Mr. Hickerson's conduct was privileged as that of a corporate officer because he was not acting contrary to HEC's best interest. As a privileged actor, the court held Mr. Hickerson could not be liable for intentional interference with the corporation's contract.

■ Colorado has adopted the elements for intentional interference with contractual relations from the Restatement (Second) of Torts § 766 (1977). Section 766 reads:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Comment j to this section of the Restatement provides, "[this] rule applies ... to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." Although this comment could be found to apply to the facts of this case, to succeed on its claim Q.E.R. must also establish that the interference with the contractual relations was improper. *Trimble v. City & County of Denver,* 697 P.2d 716, 726 (Colo.1985).

■ Determination of whether a person acted improperly in interfering with a contract depends on consideration of the factors set forth in Restatement § 767, which are:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interest sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interferences, and

(g) the relations between the parties.

*Trimble v. City & County of Denver,* 697 P.2d at 726.; *see also Boettcher DTC Bldg. Joint Venture v. Falcon Ventures,* 762 P.2d 788, 790–91 (Colo.App.1988); *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.,* 690 P.2d 207, 210 (Colo.1984). In order to decide whether a defendant's actions were justified, the fact finder must conduct a balancing of the conflicting interests and determine according to the above factors whether the alleged interference was warranted under the particular circumstances.

■ As a general rule, a corporate officer is privileged in interfering in a contract between his corporation and a third party if he is acting for a bona fide organizational purpose. *Zappa v. Seiver,* 706 P.2d 440, 442 (Colo.App.1985); *see Zelinger v. Uvalde Rock Asphalt Co.,* 316 F.2d 47, 52 (10th Cir.1963) ("the rule [is] that any interference with a corporation's contract by an officer, director or employee of the corporation who is in good faith serving the corporate interests is privileged."); *Trimble,* 697 P.2d at 726. This privilege is not absolute, but must be weighed in balance with the other competing factors listed above. *See* Restatement (Second) Torts § 767 comment b (1977) ("The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation."). Whether Mr. Hickerson was justified or acted improperly remains a question of fact under the unique circumstances of this case.

The evidence supports different inferences regarding Mr. Hickerson's motivation and conduct in negotiating with Simasko Production. Mr. Simasko testified that, when discussing the escrow agreement, HEC's secretary, Mr. Melman, indicated HEC would not sign any document that would leave Mr. Hickerson and Mr. Martin liable. Mr. Hickerson testified that he thought the partnership was liable for the drilling costs but neither he nor anyone else at HEC ever attempted to obtain a release for the partnership or for Q.E.R. when the final agreement with Simasko Production was executed. In fact, all the negotiations with Simasko Production were done without the knowledge of or notice to Q.E.R. Further, under the final agreement, HEC forfeited the leases without compensation for itself or the partnership, yet it was relieved of all its own obligations under the operating agreement, and its officers were released of their own personal liability. This arrangement could reasonably be found to have compromised HEC's position as general partner and directly harmed the partnership and Q.E.R., the only party with a significant financial stake in the partnership at that time.

HEC's capacity as general partner and its possible breach of fiduciary duty combined with Mr. Hickerson's personal liability to Simasko Production create a substantial question of whether Mr. Hickerson acted improperly under the circumstances. We conclude that there is sufficient evidence to submit the question of intentional interference with contract to the jury.

The district court's order directing a verdict is REVERSED and the case is REMANDED for a new trial.