**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 30 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BONNIE MINSON HYLER,
individually and as Administratrix and
as Surviving Spouse of William
Emerson Hyler, Jr.; CORI LYNN
HYLER, individually as surviving
child of decedent; and WILLIAM
EMERSON HYLER, III, as surviving
child of decedent,

     Plaintiffs - Appellants,

v.

GEO-SEIS HELICOPTERS, INC., and
ROBERTS AIRCRAFT COMPANY,

     Defendants - Appellees.

No. 00-1432

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 97-WM-321)**

---

Ricardo M. Barrera of Ricardo M. Barrera, LLC, Denver, Colorado, for Plaintiffs-Appellants.

Leane Capps Medford of Rose Walker, L.L.P., Dallas, Texas (Harold H. Walker,

Jr., of Rose Walker, L.L.P, Dallas, Texas, and John A. Jostad of Jostad Associates, P.C., Fort Collins, Colorado, with her on the brief), for Defendants-Appellees.

---

Before **BRISCOE**, **McKAY**, and **HALL**,[*] Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

This wrongful death claim, originally filed in Texas state court in 1994, was subsequently removed to the United States District Court for the Southern District of Texas, Houston Division. Pursuant to a motion to dismiss for forum non conveniens, Mrs. Hyler's claims against the Defendants were transferred to the United States District Court for the District of Colorado. At the end of Mrs. Hyler's case-in-chief, the district court granted Defendants' Motion for Judgment as a Matter of Law. This appeal followed.

This action was originally filed against a number of different individuals and entities. However, this appeal only involves the liability of two of the original parties sued–Geo-Seis Helicopters, Inc., and Roberts Aircraft Company. The record is unclear as to the disposition of Mrs. Hyler's potential claims against Helimar, Ltd., or Heli-Support, Inc., and they are not parties to the present action.

On January 1, 1992, Geo-Seis, Roberts, Helimar, and Heli-Support entered

---

[*]The Honorable Cynthia Holcomb Hall, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

into a joint venture agreement ("JVA"). Each party to the JVA had distinct responsibilities. Geo-Seis' responsibility under the JVA was to manage "[t]he actual day to day helicopter flight and maintenance operations conducted under this Joint Venture." Aplt. App. at 1465. Geo-Seis was also required to provide a minimum of four helicopters to be flown in joint venture operations. Roberts was responsible for providing helicopters to the joint venture by sale or, more typically, lease to the other JVA members. Heli-Support, not a party to the present action, was charged with the "day to day parts acquisition for all helicopters and support equipment for operations conducted under this Joint Venture, and other helicopters as agreed upon." Aplt. App. at 1465. Helimar, also not a party to this suit, handled "[t]he actual day to day in country handling of permits, licences, work permits," etc. Id. Helimar could also provide one helicopter for use in the joint venture, but it was not required to do so.

Geo-Seis and Helimar had worked together prior to the JVA. Geo-Seis served as a subcontractor for Helimar for a client named Geco-Prakla. As a subcontractor, Geo-Seis provided helicopter services to Geco-Prakla, operating under Helimar's Bolivian license. Believing that Helimar was passing on unnecessary expenses to Geo-Seis, Geo-Seis decided to pursue the JVA to gain additional control of its operations. Operation within the JVA changed Geo-Seis' and Helimar's roles in serving Geco-Prakla little, if at all. However, the JVA did

-3-

alter the relationship between Geo-Seis and Helimar. Instead of being considered a subcontractor while servicing Geco-Prakla's needs, Geo-Seis was a partner with Helimar.

The JVA also recognized, even endorsed, the rights of Helimar to provide helicopter services in Bolivia outside of the JVA, including servicing Geco-Prakla's needs not covered by the JVA. The JVA permitted Helimar to operate up to three helicopters outside of the JVA in addition to any helicopters it was operating under other agreements at the time the parties signed the JVA. Aplt. App. at 1465. As was the case prior to the JVA, Helimar continued to provide services to various clients outside the JVA's scope.

William Emerson Hyler, Jr., a decorated Vietnam War helicopter pilot and experienced civilian pilot, died in a helicopter crash in Bolivia on August 18, 1992. Prior to his death, Helimar employed Mr. Hyler. Helimar also owned the helicopter that Mr. Hyler was flying. Mrs. Hyler contended that the helicopter her husband operated at the time of his death was within the JVA. Mrs. Hyler based her wrongful death suit on two alternative, but not necessarily mutually exclusive, theories of liability.

Mrs. Hyler first asserted that Helimar was negligent in a variety of ways that contributed to Mr. Hyler's death. She argued that since the helicopter Mr. Hyler flew operated within the parameters of the JVA, Geo-Seis and Roberts were

jointly and severally liable for Helimar's negligence. Additionally, as joint venturers, Mrs. Hyler argued that the Defendants also violated their direct duties to provide a safe working environment for Mr. Hyler. Thus, Mrs. Hyler's first theory combined elements of direct and imputed liability.

Mrs. Hyler's second theory was that the helicopter's tail rotor failed, causing the accident. Mrs. Hyler alleged that Heli-Support overhauled and supplied the tail rotor to Helimar pursuant to the JVA. If the tail rotor was negligently overhauled and supplied to Helimar by Heli-Support within the JVA, Geo-Seis and Roberts would be jointly and severally liable based on the negligence of its joint venture partner Heli-Support. The success of Mrs. Hyler's second theory depends upon the imputation of liability to the Defendants as joint venturers with Heli-Support.

Geo-Seis and Roberts insisted that the helicopter Mr. Hyler flew at the time of his death operated outside the JVA, arguing "[i]t was not our mission. It was not our helicopter. It was not our pilot." Aplt. App. at 435:23-25. Furthermore, the Defendants argued that any tail rotor supplied to Helimar by Heli-Support was not supplied under the JVA, the tail rotor that had been supplied was not defectively overhauled, and Mrs. Hyler offered no proof that the tail rotor that Heli-Support supplied to Helimar was ever placed on the crashed helicopter. Finally, the Defendants argued that failure of the helicopter's tail rotor did not

cause the helicopter crash.

The district court granted Geo-Seis' and Roberts' Rule 50 Motion for Judgment as a Matter of Law at the close of Mrs. Hyler's case. Mrs. Hyler appeals the district court's ruling on two grounds. First, Mrs. Hyler alleges that the district court applied incorrect joint venture liability law in determining that there was no proof that the accident helicopter was being operated within the JVA at the time of the accident. Second, Mrs. Hyler argues that the district court played "expert and jury" in disallowing expert testimony that the helicopter accident resulted from tail rotor failure. We address each issue in turn.

The standard of review of a district court's grant of a judgment as a matter of law is well established.

> We review de novo a district court's disposition of a motion for judgment as a matter of law, applying the same standard as the district court. Such a judgment "is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion."

Baty v. Williamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999) (citations omitted).

Under Colorado law to avoid a Rule 50 motion, Mrs. Hyler must show some evidence of (1) a duty owed to Mr. Hyler; (2) breach of that duty; (3) causal connection between the Defendant's breach and Mr. Hyler's injuries; and (4) damages. See Hall v. McBryde, 919 P.2d 910, 912 (Colo. App. 1996). Both

parties agree that Helimar and the Defendants entered into an express JVA, and neither party contests that under Colorado law joint venturers are jointly and severally liable for the negligence of another joint venturer. Specifically, "the acts of one joint venturer are binding upon other joint venturers if those acts pertain to matters within the scope of the joint venture and the joint venturer had authority to act." Bebo Const. Co. v. Mattox & O'Brien, P.C., 998 P.2d 475, 477 (Colo. App. 2000). The parties disagree, however, as to whether the helicopter Mr. Hyler flew was being operated within the JVA.

A thorough review of the trial court transcript reveals that Mrs. Hyler presented no direct evidence supporting the allegation that Helimar's helicopter was being operated within the JVA at the time of the accident. In fact, at least two of the witnesses testified that the helicopter was being operated outside of the JVA. See, e.g., Aplt App. at 836:19-24.

On appeal, Mrs. Hyler argues that direct evidence is not required; instead, circumstantial evidence of operation within the JVA is sufficient. Mrs. Hyler points to four different items as circumstantial evidence that Helimar's helicopter was being operated within the JVA at the time of the crash. Assuming, without deciding, that circumstantial evidence would be sufficient, we address each of the four items.

Mrs. Hyler points first to the existence of a Master Service Agreement

(MSA) between Helimar and Seismic International Ltd. ("Seismic") (Geco-Prakla's subsidiary) signed on the same date that the JVA was signed. Aplt. App. at 1468-78. The MSA requires Helimar to provide four helicopters to service Seismic. The JVA only permitted Helimar to operate three helicopters outside the JVA in addition to contracts that Helimar currently held. Thus, Mrs. Hyler argues that if Helimar supplied the four helicopters promised in the MSA Helimar simultaneously would be violating the JVA, and the only way to avoid this violation is to assume that one of the four helicopters provided under the MSA was also operating under the JVA.

Mrs. Hyler's contention fails. The Defendants were not parties to the MSA, thus there is no basis for construing the contracts together. Furthermore, the MSA required Helimar to "provide" four helicopters, not necessarily operate them. Aplt. App. at 1468. Helimar could have used Geo-Seis or another subcontractor to fulfill its obligations to Seismic. The presence of another contract with different parties and different requirements is insufficient evidence upon which a reasonable jury could conclude that the crashed helicopter operated within the JVA.

Mrs. Hyler next points to a marketing letter Geo-Seis wrote on December 19, 1991, announcing the pending JVA. The letter stated in part, "Geo-Seis Helicopters, Inc. shall provide parts support for all Aerospatiale helicopters

-8-

belonging to Helimar in Bolivia, regardless if those helicopters are in or out of this Joint Venture." Aplt. App. at 1493. However, this letter pre-dated the JVA's creation. Additionally, all evidence presented at trial indicated that the tail rotor assembly Mrs. Hyler claims was placed on the crashed helicopter was sent to Helimar from Heli-Support, not from Geo-Seis. Furthermore, the part in question was sent on December 18, 1991, the day before the letter in question was written. Aplt. App. at 1614. Even taking the evidence in a light most favorable to Mrs. Hyler, the marketing letter is not evidence of the crashed helicopter being operated within the JVA.

Next Mrs. Hyler argues that her own testimony established evidence that the crashed helicopter was operated within the JVA. In May of 1992, Mr. Hyler was flying for Geo-Seis and servicing Geco-Prakla. Mr. Hyler left Geo-Seis' employ to work for Helimar. Mrs. Hyler argues that since her husband continued to service Geco-Prakla as a Helimar employee, the helicopter he operated must have been within the JVA. See Aplt. Brief at 23. However, as discussed above, the JVA expressly recognized Helimar's right to continue servicing other clients including Geco-Prakla outside the confines of the JVA.

Finally, Mrs. Hyler relies on evidence that a Geo-Seis employee ended up carrying the load to Geco-Prakla that her husband was in the process of carrying at his death. Once again this is not evidence that the Helimar helicopter Mr.

Hyler flew operated within the JVA. The fact that a customer calls a second entity to provide services that their first choice could not does not mean that the two service providers operated as a joint venture. Geco-Prakla was simply obtaining needed services from different helicopter operators.

In sum, Mrs. Hyler failed to present any direct evidence that the crashed helicopter was being operated within the JVA at the time of Mr. Hyler's accident. The circumstantial evidence presented is also insufficient. Mrs. Hyler has failed to establish that Defendants owed Mr. Hyler a duty individually or as joint venturers with Helimar. We conclude that there is an insufficient legal basis for a jury to conclude that the helicopter Mr. Hyler was flying at the time of the accident was being operated within the JVA. Since Mrs. Hyler failed to show that Defendants owed Mr. Hyler a duty, it is unnecessary to address the other tort requirements, such as breach of duty, causation, and damages.

Mrs. Hyler's second ground for appeal is that the district court improperly played the role of "expert and jury" in excluding expert Grigby's testimony attributing the crash of the helicopter to a failed tail rotor. See Aplt. Brief at 32-43. For Mrs. Hyler's case to get to the jury she would have to establish a chain of events. First, Mrs. Hyler would have to submit evidence that Heli-Support supplied the tail rotor to Helimar within the JVA for liability to impute to Geo-Seis and Roberts. Second, she must provide evidence that Heli-Support

improperly overhauled the tail rotor. Third, Mrs. Hyler must submit evidence that the tail rotor Heli-Support overhauled was actually installed upon the crashed helicopter. Finally, Mrs. Hyler would have to provide evidence that the helicopter's defective tail rotor caused the crash.

The district court's ruling under Daubert/Kumho prevented Mrs. Hyler from presenting expert evidence that the failure of the helicopter's tail rotor caused the crash–the fourth link. However, Mrs. Hyler's failure to provide evidence of the other three links in the chain render the district court's decision immaterial.

As indicated previously, the evidence at trial indicated that Heli-Support provided the tail rotor to Helimar on December 18, 1991, weeks before the JVA was signed. There was no evidence or testimony that the tail rotor was provided pursuant to the JVA. Furthermore, not a single witness testified nor was evidence submitted that could lead a jury to conclude that Heli-Support negligently performed the tail rotor overhaul. On the contrary, all testimony indicated that the overhaul was correctly performed. See, e.g., Aplt. App. 1103-06. Finally, Mrs. Hyler failed to submit evidence that the tail rotor Heli-Support overhauled was ever placed upon the crashed helicopter. Each aircraft part has a number assigned to it that is unique in nature. Direct evidence in this regard would have required only the matching of the crashed helicopter's tail rotor number with the number of the tail rotor provided to Helimar by Heli-Support. No such evidence

was presented.

Even if the district court had allowed expert testimony that the accident was caused by tail rotor failure, Mrs. Hyler's failure to establish that the part was supplied within the JVA, was defectively overhauled, and was actually installed on the crashed helicopter is fatal. Any error that the district court may have committed would be harmless error given the absence of the other necessary elements to establish Defendants' duty.

Viewing the evidence and inferences in a light most favorable to Mrs. Hyler, we conclude that the evidence "points but one way and is susceptible to no reasonable inferences which may support [her] position." Q.E.R., Inc. v. Hickerson, 880 F.2d 1178, 1180 (10th Cir. 1989) (citation omitted). For the foregoing reasons, we affirm the district court.

AFFIRMED.